1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TOMMY D. RAINWATER,                )
                                                          )        No. 12-CV-024-JPH
              Plaintiff,                            )
                                                          )
v.                                                       )        ORDER GRANTING PLAINTIFF'S
                                                          )        MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                   )        JUDGMENT AND REMANDING FOR
Commissioner of Social Security,  )        ADDITIONAL PROCEEDINGS
                                                          )        PURSUANT TO SENTENCE FOUR 42
              Defendant.                        )        U.S.C. § 405(g)
                                                          )
                                                          )
                                                          )

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec.16, 18.) Attorney

Lora Lee Stover represents plaintiff; Special Assistant United States Attorney Stephanie Kiley represents

defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing

the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's Motion for

Summary Judgment and **DENIES** defendant's Motion for Summary Judgment.

### JURISDICTION

        Plaintiff Tommy D. Rainwater (plaintiff) protectively filed for supplemental security income

(SSI) on September 15, 2009. (Tr. 161.) Plaintiff initially alleged an onset date of February 15, 2006, but

at the hearing, plaintiff amended the alleged onset date to the protective filing date of an earlier

application, April 7, 2009.[1] (Tr.45, 131.) Benefits were denied initially and on reconsideration. (Tr. 79,

_____

        [1]At the hearing, plaintiff's council stated, "[W]e would be amending to the protective filing date
of the earlier application. It would appear that the - - probably what you have is the protective filing date
of 9/15 of '09, but he had a prior app[lication] within the statutory period." (Tr. 45.) The protective filing
date of the earlier application is April 7, 2009. (Tr. 131.) However, the ALJ's decision states, "At the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1

83, 94.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Caroline Siderius on November 4, 2010. (Tr. 42-65.) Plaintiff was represented by counsel and testified at the hearing. (Tr.43-67.)Vocational expert K. Diane Kramer also testified. (Tr. 67-74.) The ALJ denied benefits (Tr. 25-34) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 35 years old at the time of the hearing. (Tr. 44.) He went to school through the 12th grade. (Tr. 54.) He has work experience as a telemarketer. (Tr. 57.) His last job was in 2006 cleaning for two banks. (Tr. 44.) He testified the job ended because he lost his car and had no transportation to work. (Tr. 44.) Since then, he as been at home with his children. (Tr. 44.) He has a shoulder injury but his back is his main problem. (Tr. 47.) In 2004, he was playing basketball and fell on his right side. (Tr. 47.) He fractured his hip. (Tr. 48.) Since then, he has not been able to do much. (Tr. 47.) He is in pain on a daily basis. (Tr. 48.) He testified he walks with a limp. (Tr. 51.) He has tried steroids and muscle relaxers and nothing seems to help his pain. (Tr. 48.) His spine also hurts. (Tr. 49.) He is being treated for depression and has mood swings. (Tr. 49.) He does not sleep well and gets irritated easily. (Tr. 50.) At the time of the hearing, plaintiff also had an undiagnosed kidney problem. (Tr. 68.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

hearing the claimant amended the alleged onset date to September 15, 2009, the filing date of the current Title XVI application." (Tr. 25.) Thus, although it appears the ALJ considered all of the evidence in the record, the decision does not reference the correct amended alleged onset date of April 7, 2009.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -2

1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -3

whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since September 15, 2009, the application date and the amended alleged onset date. (Tr. 27.) At step two, the ALJ found plaintiff has the following medically determinable impairments: degenerative joint disease of the left hip; degenerative disc disease; depression. (Tr. 27.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 28.) The ALJ then determined plaintiff has the following residual functional capacity:

> [C]laimant is able to lift 20 pounds occasionally and 10 pounds frequently. He is able to stand and/or walk for a total of 4 hours in an 8-hour workday. He can sit for a total of 4 hours in an 8-hour workday, and would need a sit-stand option. He should avoid bending and crawling. He should never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He should not operate heavy equipment or machinery. He is capable of occasional contact with the general public.

(Tr. 29.) At step four, the ALJ found plaintiff is capable of past relevant work (Tr. 32.) Alternatively, after considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined there are other jobs existing in the national economy that plaintiff is also able to perform. (Tr. 33.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since September 15, 2009, the date the application was filed and the amended alleged onset date. (Tr. 34.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts: (1) the ALJ failed to develop the record; (2) the ALJ did not properly assess plaintiff's RFC; (3) the ALJ posed an improper hypothetical to the vocational expert; (4) the ALJ erred in assessing plaintiff's credibility; and (5) the evidence as a whole does not support the ALJ's decision. (ECF No. 16 at 7-14.) Defendant argues: (1) the ALJ reasonably developed the record; (2) substantial evidence supports the RFC assessment; (3) the ALJ reasonably discredited plaintiff's subjective complaints; (4) the hypothetical posed to the vocational expert takes into account all of plaintiff's limitations supported by the record. (ECF No. 19 at 11-21.)

**DISCUSSION**

1.     **Duty to Develop the Record**

Plaintiff argues harmful error exists due to the ALJ's failure to fully develop the record regarding limitations presented by mental illness. (ECF No. 16 at 10.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a.  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).

Plaintiff argues Dr. Severinghaus, an examining psychologist "specifically stated that more development was needed." (ECF No. 16 at 10.) The only report an examining mental health provider is the October 2009 opinion of Dr. Severinghaus.[2] (Tr. 295-99.) Dr. Severinghaus diagnosed depressive disorder NOS, mild to moderate, provisional; rule out alcohol abuse; recreational marijuana use per self-report, rule out abuse; possible pain disorder associate with both psychological factors and a general medical condition, chronic; and mild social and post-traumatic anxiety, not presently diagnosable. (Tr. 298.)Dr. Severinghaus went on to state plaintiff "would probably benefit from a course of counseling, partly involving career/vocational counseling . . Further assessment of his mood and anxiety, and his use of alcohol and marijuana, would be appropriate. . . . If diagnostic questions remain, review of his school records might be desirable, and possibly IQ testing would be appropriate. Testing with the TOMM, SIMS, etc. might also be desirable." (Tr. 298-99.) The ALJ noted Dr. Severinghaus did not assess any specific functional limitations and gave little probative value to Dr. Severinghaus' opinion. (Tr. 32.)

---

[2]There is little evidence of mental health treatment in the record. In October 2010, plaintiff reported to Dr. Meyer, a treating physician, that he was feeling depressed. (Tr. 350.) Dr. Meyer administered a PHQ-9 questionnaire and plaintiff scored in the moderate to severe range for depression. (Tr. 351.) Dr. Meyer prescribed fluoxetine for depression. (Tr. 351.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -6

1    Defendant argues plaintiff misconstrued the record and Dr. Severinghaus did not state further

2    assessment was necessary. (ECF No. 19 at 12.) Defendant cites Dr. Severinghaus' statement, "If

3    diagnostic questions remain . . ." as indicating Dr. Severinghaus only suggested additional testing,

4    deferring the issue of further assessment to the ALJ. (ECF No. 19 at 12.) However, defendant overlooks

5    the preceding sentences which set the context:

6        *Further assessment of his mood and anxiety, and his use of alcohol and
         marijuana, would be appropriate.* He may benefit from counseling
7        regarding psychological pain management strategies, hopefully to reduce
         use of narcotic medication. *If diagnostic question remain*, review of his
8        school records might be desirable, and possibly IQ testing would be
         appropriate.

9    (Tr. 298-99, emphasis added.) A plain reading reflects Dr. Severinghaus recommended further testing

10   of mood, anxiety and drug and alcohol use. If, after further testing and possible counseling, diagnostic

11   questions were still outstanding, Dr. Severinghaus suggested school records and IQ testing might be

12   helpful. This plain reading of the Dr. Severinghaus' report is supported by the fact that Dr. Severinghaus

13   made no definitive diagnosis, as all of his diagnoses were "provisional," "rule out," "possible" or "not

14   presently diagnosable."[3] Further, Dr. Severinghaus' failure to assess functional limitations seems

15   reasonable given his conclusion that the diagnostic picture is unclear.

16       At the hearing, plaintiff's counsel raised the issue of the adequacy of the psychological findings:

17       I would like to make note that I do not think that the [disability]
         determination service really did a very good job in terms of scheduling the
18       consultative exam that was done with Dr. Severing[haus] because in
         reviewing that report, which is at Exhibit 6F, it would appear to me that
19       they must not have authorized him to administer any testing because his
         diagnostic impressions are based solely on his mental status interview
20       with Mr. Rainwater. And so, again, I don't think that's definitive on the
         issue of any psychological impairment.

21

22   _____

23       [3]A provisional diagnosis is when there "is enough information available to make a 'working'
     diagnosis, but the clinician wishes to indicate a significant degree of diagnostic uncertainty."
24   DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 5. a "rule out" diagnosis
     means there is evidence that the criteria for a diagnosis may be met, but more information is needed in
25   order to rule it out. *See U.S. v. Grape*, 549 F.3d 591, 593-94 n. 2 (3rd Cir. 2008); *Williams v. U.S.*, 747
     F. Supp 967, 978 n. 19 (S.D.N.Y 1990); *Simpson v. Comm.*, 2001 WL 213762, *7-8 (D. Or. 2001)
26   (unpublished opinion). *See also* Wayne G. Siegel, *Differential Diagnosis of Substance Use Disorders
     and Other Psychiatric Disorders*, Gary L. Fischler and Associates, PA,
27   http://www.psycheval.com/substance%20_use_disorders.shtml (last visited January 22, 2013)("Although
     not part of the formal DSM-IV convention, many clinicians use the term 'rule out' just prior to a
     diagnosis to indicate that not enough information exists to make the diagnosis, but it must be considered
28   as an alternative.").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -7

1

2 (Tr. 42.) The ALJ noted Dr. Severinghaus had mentioned school records might be needed and plaintiff's

3 attorney reminded the ALJ she had submitted some to the record. (Tr. 43.) The ALJ then stated, "And

4 also, there's no information about any type of learning disorders or additional IQ testing. But what we

5 can do is – let me get some testimony and if we think we need additional testing, then we can go do that

6 after the hearing." (Tr. 43.) Defendant's arguments suggests the ALJ's duty of inquiry was satisfied by

7 eliciting testimony about plaintiff's academic background. (ECF No. 19 at 13, Tr. 54-58.) However,

8 plaintiff's past academic performance does not shed light on findings regarding plaintiff's current mood

9 and anxiety and their effects on his functional abilities. Thus, the ALJ and defendant overlooked Dr.

10 Severinghaus' primary recommendation for additional development of plaintiff's mental health status.

11    Furthermore, the plaintiff made a number of errors on the cognitive mental status exam. (Tr. 298.)

12 Dr. Severinghaus opined, "Some of his responses seem unusual given his presentation. There is no

13 evidence today of drug high or intoxication. His presentation and responses suggest the possibility of

14 episodic or continuing alcohol abuse []." (Tr. 298.) The ALJ mentioned the errors made during the mental

15 status exam and noted "it is not clear whether the cognitive deficits are related to possible alcohol use"

16 (Tr. 27) and "it is unclear whether these mental status exam abnormalities truly stem from the claimant's

17 underlying depression." (Tr. 31.) The ALJ identified an ambiguity in the record, but apparently resolved

18 it by assuming that plaintiff's deficiencies are, in fact, related to possible alcohol use. The ALJ must

19 conduct the five-step inquiry without attempting to determine the impact of substance addiction.  20

20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ has a duty to develop the record to determine the extent and

21 likely cause and effects of plaintiff's deficiencies, including problems with anxiety and mood, because

22 there are ambiguities in the evidence regarding those findings not well-clarified elsewhere in the record.[4]

23    The only other significant mental health evidence in the record is the opinion of the state

24

25    [4] If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not
26 entitled to benefits, and there is no need to proceed with further analysis. *Id*. When the ALJ finds the
   claimant disabled and there is evidence of substance addiction, the ALJ should proceed under the
27 sequential evaluation and § 404.1535 or § 416.935 to determine if the claimant would still be disabled
   absent the substance addiction. *Bustamante*, 262 F.3d 949, 955 (9th Cir. 2001).  If a claimant is found
28 disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction
   is not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

reviewing psychologist, Dr. McRae. Dr. McRae completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment in November 2009. (Tr. 300-17.) Dr. McRae assessed moderate limitations in three functional areas and found plaintiff is able to remember and carry out simple work tasks, can interact appropriately with others, and can successfully cope and adapt. (Tr. 300-02.) Dr. McRae's findings were affirmed by Dr. Gardner in March 2010. (Tr. 329.) The ALJ found Dr. McRae's opinion "is partially consistent with the medical record, but is somewhat conclusory," suggesting Dr. McRae's findings are not well-supported. (Tr. 32.) The ALJ noted the opinion does not adequately consider plaintiff's subjective complaints and does not adequately consider the effects of possible alcohol abuse. (Tr. 32.) Thus, the ALJ gave "some, but not great weight" to the non-examining psychologist opinion. (Tr. 32.)

After the ALJ rejected Dr. Severinghaus' opinion and gave little weight to Dr. McRae's opinion, there is little psychological opinion evidence upon which the ALJ could rely in determining plaintiff's mental residual functional capacity. As a result, the ALJ's findings are not well-supported by substantial evidence in the record. Further development of the record is required to establish a mental residual functional capacity finding supported by substantial evidence.

**2.     Credibility**

Plaintiff argues the ALJ erred in assessing his credibility. (ECF No. 16 at 10-12.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ gave several reasons for the negative credibility finding. First, the ALJ concluded plaintiff's allegations of disabling symptoms and limitations are inconsistent with a number of clinical findings. (Tr. 30.) The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). However, an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). The ALJ cited instances where objective evidence of plaintiff's physical problems may be inconsistent with his allegations. (Tr. 30.) Plaintiff fails to address this evidence or explain why the ALJ's finding is in error. However, for the reasons discussed *infra*, the ALJ's statements regarding the objective psychological evidence do not support the negative credibility finding.

Second, the ALJ found plaintiff lacked credibility because despite allegations of limiting depression, plaintiff has not had any mental health treatment. (Tr. 31.) The Ninth Circuit has observed that depression "is one of the most under-reported illnesses in the country because those afflicted often do no recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100

F.3d 1462, 1465 (9th Cir. 1996)  Although Plaintiff may have failed to seek psychiatric treatment for his mental health complaints, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (*quoting Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). It was not appropriate for the ALJ to consider Plaintiff's limited mental health treatment as evidence of a lack of a credibility.

Third, the ALJ cited evidence of plaintiff's daily activities as a basis for the negative credibility finding. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.* Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* Yet daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ cited a number of activities mentioned by plaintiff throughout the record. (Tr. 31.) While some of the activities noted by the ALJ may be construed as inconsistent with plaintiff's allegations of disability, it is not clear from plaintiff's daily activities alone that he is able to engage in the more rigorous demands of the workplace.

Lastly, the ALJ pointed out plaintiff has provided conflicting information about his reasons for leaving his past work. (Tr. 31.) The ALJ that plaintiff reported on his application that he stopped working in 2006 due to his impairments, including depression. (Tr. 31, 166.) By contrast, in October 2009, plaintiff told Dr. Severinghaus he lost the job when he lost transportation. (Tr. 31, 295.) Plaintiff also testified at the hearing that his last job ended when he lost his vehicle. (Tr. 44.) In another application, plaintiff wrote he stopped working to stay home to take care of his children, which he also mentioned at the hearing. (Tr. 44.) Plaintiff's statement regarding his reasons for stopping work may be somewhat inconsistent, but the ALJ must point to more than one inconsistency over the entire record to establish "clear and convincing" reasons.

The ALJ made several errors in the credibility finding, including consideration of improper reasons and citing reasons not supported by substantial evidence. The remaining reasons do not rise to the level of clear and convincing reasons supported by substantial evidence. As a result, the credibility

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

finding is flawed and the ALJ erred.

**3.      RFC and Hypothetical**

Plaintiff takes issue with the ALJ's residual functional capacity assessment and asserts the ALJ posed a hypothetical to the vocational expert that did not take into account all of plaintiff's physical and psychological limitations. (ECF No. 16 at 12-13.) The court agrees with plaintiff that the RFC finding is not supported by substantial evidence for the reasons cited herein, and the RFC should be reconsidered on remand. Because the RFC finding is in not well-supported, the ALJ's hypothetical to the vocational expert is also in question.

### CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should further develop the record with regard to plaintiff's mental health. The ALJ should also reconsider the credibility finding and make a new residual functional capacity determination supported by substantial evidence in the record. The court expresses no opinion as to the outcome of the ultimate disability determination on remand.

Accordingly,

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.      Defendant's Motion for Summary Judgment **(Ct. Rec. 18 )** is **DENIED**.

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED January 30, 2012

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12